UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,                      Case No. 22-cr-20519
                                               Hon. Laurie J. Michelson

vs.

SEMAJ AYERS,

       Defendant.

---

### DEFENDANT'S SENTENCING MEMORANDUM

**I.   INTRODUCTION**

SEMAJ AYERS, is scheduled to be sentenced before this Honorable Court on August 21, 2025 at 11:00 a.m. Mr. Ayers pleaded guilty pursuant to a Rule 11 Plea Agreement to Count 2 of the Indictment which charged Mr. Ayers with Kidnapping, Aiding and Abetting in violation of 18 U.S.C. §1201(a)(1) and 18 U.S.C. §2.

This Court knows that calculating the correct guideline range is not the end of the sentencing inquiry. "The guidelines are not only not mandatory on sentencing courts they are also not to be presumed reasonable." *Nelson v. United States*, 555 U.S. 350, 351 (2009); *Gall v. United States*, 552 U.S. 38 (2007); *Kimbrough v. United States*, 552 U.S. 85 (2007). The guidelines are an "initial

1

benchmark" or "starting point," *Gall* at 49, but there is no "thumb on the scale for the guideline range." *United States v. Sachsenmaier*, 491 F.3d 680, 685 (7th Cir. 2007).  While the sentencing guidelines remain an important consideration, they are just one of the numerous factors that a District Court must consider when sentencing a defendant. *U.S. v. McBride*, 434 F.3d 470 (6th Cir. 2006).

## II. APPLICATION OF THE SENTENCING FACTORS PURSUANT TO 18 U.S.C. §3553(a)

The United States Code is quite explicit about the role of 18 U.S.C. §3553(a) in sentencing determinations.  18 U.S.C. §3582 specifically states:

> The court, in determining whether to impose a term of imprisonment and, if a term of imprisonment is to be imposed in determining the length of this term, *shall consider* the factors set forth in section 3553(a) to the extent they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation. (Emphasis added).

Mr. Ayers respectfully requests that the Court consider the following 3553(a) factors and impose a sentence below the bottom of the guideline range.

### A. NATURE AND CIRCUMSTANCES OF THE OFFENSE PURSUANT TO 18 U.S.C. §3553(a)(1)

Mr. Ayers does not take issue with the circumstances of the offense and his involvement as an aider and abettor in the kidnapping of AV-1. As a starting point, the Court should note that Mr. Ayers had nothing to do with the planning of the kidnapping. Mr. Ayers was not involved in devising a plan to kidnap AV-1 after

her friends attempted to murder Cortez Blake. Mr. Ayers' presence at Mr. Blake's residence was the result of the shooting of Mr. Blake.

Moreover, there is no evidence that Mr. Ayers participated or was present when AV-1 was abducted from the hospital. Mr. Ayers was not involved in taking AV-1 from the hospital to an abandoned area where she was interrogated and assaulted.

Mr. Ayers arrived at the Trinity Street address after AV-1 was taken to this location by others. Further, Mr. Ayers did not assault AV-1 while she was at the Trinity Street address. AV-1 never accused Mr. Ayers of assaulting her in any of the numerous interviews and statements that she made to the authorities.

Lastly, Mr. Ayers was not the person who contacted Maijah Green and/or Shatonnia Kimbrough to come to the Trinity Street address to assault AV-1. Mr. Ayers acknowledges and admits that he was present at the Trinity Street address when AV-1 was held against her will and was assaulted by co-defendants Green and Kimbrough.

Mr. Ayers is remorseful and apologetic for his involvement regarding the kidnapping of AV-1. At sentencing, Mr. Ayers will express his remorse and demonstrate to this Court that he is truly sorry for what happened to AV-1.

Mr. Ayers has been incarcerated since November 3, 2022. He is currently 23 years old. At the time of the kidnapping of AV-1, Mr. Ayers was 19 years old.

During the past few years of incarceration, Mr. Ayers has had time to reflect about his childhood, his upbringing, his mental health issues, the decisions he has made and what his future could look like. Simply stated, Mr. Ayers knows that he is at the proverbial fork in the road. He desires to become a productive member of society and not spend the rest of his life in and out of prison.

> **B.     HISTORY AND CHARACTERISTICS OF THE DEFENDANT PURSUANT TO 18 U.S.C. §3553(a)(1)**

The Offender Characteristics reported at paragraphs 58 through 86 of the PSIR, are an accurate recitation of Mr. Ayers' personal and family data, his physical condition, his mental and emotional health, his lack of substance abuse, his education, employment history and financial condition.

Mr. Ayers was born on April 5, 2002, in Ohio. Mr. Ayers' parents were never married. Mr. Ayers' childhood was unstable to say the least. Moreover, Mr. Ayers' father was an abusive alcoholic. Mr. Ayers experienced and witnessed child abuse, domestic violence and alcohol abuse by his father. Mr. Ayers' father ultimately was sent to prison for child abuse and domestic violence.

Mr. Ayers was primarily raised by his mother and maternal grandmother. His mother had her own issues and his grandmother was eventually awarded guardianship of Mr. Ayers.

As a result of the trauma Mr. Ayers experienced at the hands of his father, Mr. Ayers was an angry child who began engaging in disruptive behaviors in

school. Between the ages of 8 and 10, Mr. Ayers was placed at the Hawthorne Center in Northville and at Kingswood Hospital in Ferndale. Mr. Ayers also was in counseling at the Children's Center.

Mr. Ayers was diagnosed with ADHD, PTSD and Bipolar Disorder. Mr. Ayers recalled being prescribed Concerta, Depakote, Adderall and Seroquel. Currently Mr. Ayers is prescribed Zoloft for depression and Loxipin for anxiety at the Genesee County Jail.

From 2015 through 2017, Mr. Ayers entered the state juvenile system as a result of an armed robbery case when he was 13 years old. Mr. Ayers spent approximately 2 years at the Calumet Center in Highland Park.

Upon his release from the juvenile system, Mr. Ayers attended Oak Park Alternative High School. In August, 2020, Mr. Ayers was dropped from school for lack of attendance. Mr. Ayers' school transcripts indicate that he has completed the 10th grade. While incarcerated at the Genesee County Jail, Mr. Ayers has taken some GED classes.

In the final analysis, Mr. Ayers had a difficult and traumatic upbringing. He was exposed to unthinkable violence and alcoholism at a young age. Mr. Ayers' childhood was simply awful. No child should have to grow up in the kind of environment that Mr. Ayers did. This certainly caused Mr. Ayers to "act out" and engage in disruptive and risky behaviors. Simply stated, Mr. Ayers was a product

of an unstable and violent environment. An environment where sometimes there was no roof over his head, no food on the table, nobody to lift him up and no father figure to point him in the right direction. Instead, his father was a violent abusive alcoholic.

Attached as Exhibit 1 are three character letters. One is from Mr. Ayers' grandmother, Sherry Brown, the second is from his sister, Shavonna Stanford, and the third letter is from his godmother, DeAnna Futrell.

The common theme throughout the three letters is that Mr. Ayers is remorseful and that he has taken full responsibility for his actions. He has not tried to deflect blame and that he is committed to making amends and to becoming a better human being.

The letters also describe a young man who was always quick to look after those around him. Despite his conduct, Mr. Ayers has the capacity to show kindness and compassion for others. It is clear that the three women in his life believe that he has matured and that he can ultimately become a productive member of society.

In the time that undersigned counsel has represented Mr. Ayers, he has observed his intelligence, growth and maturity. Mr. Ayers has expressed his remorse for his conduct. Mr. Ayers has expressed his desire to use his traumatic childhood as a reason to succeed in life, not an excuse to be a failure.

### C. THE NEED FOR THE SENTENCE IMPOSED PURSUANT TO 18 U.S.C. §3553(a)(2)(A)-(D)

Mr. Ayers understands and accepts that there are consequences for criminal activity. He fully understands that the Court must impose a sentence that reflects the seriousness of his offense and to promote respect for the law. Mr. Ayers has taken responsibility for his actions. This is evidenced by his admission of guilt and acceptance of responsibility for his actions.

### 1. Seriousness of the Offense, Respect for Law and Just Punishment

Section 3553(a)(2)(A) requires the Court to consider "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." A sentence that is excessive in light of the seriousness of the offense promotes disrespect for law and provides unjust punishment. In August of 2003, Justice Anthony Kennedy gave a speech at the ABA Annual Meeting in San Francisco where he stated:

> Our resources are misspent, our punishments too severe; our sentences too long . . . the sentencing guidelines are responsible in part for the increased terms. . . [and they] should be revised downward.

On February 14, 2007, Justice Kennedy again addressed this issue when he testified before the Senate Judiciary Committee and stated:

> Our sentences are too long, our sentences are too severe; our sentences too harsh . . . there is no compassion in the system. There's no mercy in the system.

7

In *United States v. Bannister*, 786 F. Supp. 2d 617 (E.D.N.Y. 2011), the Court addressed the length of the prison sentences in the United States:

> The increased prison population is due in large part to longer sentences. For the same crimes, American prisoners receive sentences twice as long as English prisoners, three times as long as Canadian prisoners, four times as long as Swedish prisoners. Yet these countries' rates of violent crime are lower than ours, and their rates of property crime are comparable.

The question at every criminal sentencing is what is the just punishment for the offense. Mr. Ayers knows and accepts that he will receive a substantial custodial sentence. He also understands that he will be on Supervised Release for a period of time. Supervised Release is recognized as an additional punishment separate from incarceration. *United States v. Reese*, 71 F.2d 582, 587-588 (6th Cir. 1995). Given Mr. Ayers' traumatic childhood, his age at the time of the offense and his mental health issues, a departure from the guidelines is warranted. Moreover, the Semaj Ayers who this Court will sentence is a more mature, reflective and remorseful Semaj Ayers who was arrested in November, 2022.

### 2. Deterrence to Criminal Conduct

Section 3553(a)(2)(B) requires the Court to consider "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct." The facts of Mr. Ayers' case do not suggest that a guideline sentence is necessary to deter Mr. Ayers from engaging in future criminal conduct.

Insofar as the statute instructs the Court to consider the need for this sentence to act as a general deterrent to others, there is no evidence, empirical or otherwise, that a custodial sentence in this case would deter others. The United States Sentencing Commission has continued to study the theory of general deterrence and has encouraged research on the subject. Empirical research has shown that while certainty has a deterrent effect, "increases in severity of punishment do not yield significant (if any) marginal deterrent effects". *Michael Tonry, Purposes and Functions of Sentencing*, 34 Crime & Just. 1, 28 (2006). "Three National Academy of Science panels … reached that conclusion, as has every major survey of the evidence." *Id*. *See also, Zvi D. Gabbay*, *Exploring the Limits of the Restorative Justice Paradigm: Restorative Justice and White Collar Crime*, 8 Cardozo J. Conflict Resol. 421, 447-448 (2007) ("[C]ertainty of punishment is empirically known to be a far better deterrent than its severity.").

### 3. Protection of the Public From Further Crimes of the Defendant

Section 3553(a)(2)(C) requires the Court to consider "the need for the sentence imposed . . . to protect the public from further crimes of the defendant." This purpose has to do with both the defendant's risk of recidivism and the danger posed by the defendant, if any. It "is particularly important for those offenders whose criminal histories show repeated serious violations of the law." S. Rep. No. 98-225 at 76 (1983).

There is no question that Mr. Ayers' criminal history should give this Court pause for concern. However, as stated herein, Mr. Ayers grew up poor and in an unstable environment. He witnessed violence and abuse at the hands of his father, and he suffers from mental health issues.

A sentence below the guideline range will provide adequate protection of the public. If for no other reasons, a sentence commensurate with some of his co-defendants at 96 months will remove Mr. Ayers from the community for a substantial period of time.

>    **4.    To Provide Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment**

Section 3553(a)(2)(D) also mandates that the Court "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." The relevant statute and case law make clear that prison is not a means of providing treatment. *Tapia v. United States*, 564 U.S. 319 (2011); 28 U.S.C. § 994(k) ("The Commission shall insure that the guidelines reflect the appropriateness of imposing a sentence to a term of imprisonment for the purpose of rehabilitating the defendant or providing the defendant with needed educational or vocational training, medical care, or other correctional treatment.

As such, Cognitive Behavioral Therapy and mental health treatment, while incarcerated, would go a long way towards getting Mr. Ayers on the right path. It

10

is respectfully submitted that the circumstances of Mr. Ayers' youth played a significant role in where he is at today. Additionally, his age and mental health issues have also played a major role in the decisions Mr. Ayers has made.

Mr. Ayers is an engaging and intelligent young man who has the potential to become a productive and law abiding citizen. He simply lacks the tools that are necessary for him to achieve his goals. He is still a very young man who needs to come to terms with his upbringing and move forward in a positive manner. Mr. Ayers needs corrective counseling and opportunity, not a long prison sentence.

**D. THE KINDS OF SENTENCES AVAILABLE PURSUANT TO 18 U.S.C. §3553(a)(3)**

This Honorable Court has the unfettered discretion to impose a sentence below the guideline range.

**E. THE SENTENCING RANGE SUGGESTED BY THE SENTENCING GUIDELINES PURSUANT TO 18 U.S.C. §3553(a)(4)**

The parties and Probation agree that the applicable guideline range is 168 to 210 months. This calculation is based upon a total offense level of 33 and a Criminal History Category III.

This Court is allowed to depart under §4A1.3(b)(1) if it determines defendant's criminal history category significantly over-represents either the defendant's criminal history or the likelihood of recidivism.

Section 4A1.3 is written in the disjunctive and allows the district court to depart downward if it determines that the criminal history category significantly over-represents either the defendant's criminal history or the likelihood of recidivism. See, U.S.S.G. §4A1.3; *see also, United States v. Senior*, 935 F.2d 149, 150-51 (8th Cir. 1991) (upholding §4A1.3 departure without considering recidivism); *United States v. Clark*, 8 F.3d 839, 843 (D.C. Cir. 1993).

Once the court decides that the criminal history category designation over-represents the seriousness of a defendant's criminal history or likelihood of recidivism, the court is permitted, under advisory guidelines, to base a defendant's sentence on the criminal history category that is more appropriate given the defendant's criminal record and background. *United States v. Clark*, 8 F.3d 839, 846 (D.C. Cir. 1993). *Accord, see United States v. Bowser*, 941 F.2d 1019, 1026 (10th Cir. 1991).

A sentencing court may utilize offender characteristics that bear upon a defendant's criminal history or likelihood for recidivism in considering departure under §4A1.3(b)(1). The judge must "consider the historical facts of the defendant's criminal career." *United States v. Gayles*, 1 F.3d 735, 736 (8th Cir. 1993). A defendant's age at the time of conviction, time between convictions, and the nature of those convictions are proper factors to also consider. *United States v. Shoupe*, 988 F.2d 440, 447 (3rd Cir. 1994); *United States v. Brown*, 985 F.2d 478, 482 (9th Cir. 1993) (age at time of prior convictions and nature of those convictions

12

are proper factors to consider in determining whether career offender status over-represents seriousness of the defendant's criminal history.

Mr. Ayers received a total a four criminal history points cases. Mr. Ayers received two points for a juvenile conviction when he was just 13 years old. The other two points emanate from a CCW case when he was 18 years old. His criminal history is overstated given his age and his mental and emotional issues.

Additionally, this Court should give minimal weight to the guideline range in its analysis of the §3553(a) factors as they apply to Mr. Ayers' sentence, s*ee, United States v. Aldelson*, 441 F.Supp.2d 506, 514 (S.D.N.Y. 2006) (citing Kate Stith & Jose A. Cabranes, *Fear of Judging: Sentencing Guidelines in the Federal Courts* (1998).

**F.    ANY PERTINENT POLICY STATEMENT FROM THE SENTENCING COMMISSION PURSUANT TO 18 U.S.C. §3553(a)(5)**

As stated above, the United States Sentencing Commission has issued policy statements that age and mental health may be relevant in determining whether a departure is warranted. *See*, §5H1.1 and § 5H1.3.

As for "age" the Sentencing Commission states, in pertinent part:

> A downward departure also may be warranted due to the defendant's youthfulness at the time of the offense or prior offenses. Certain risk factors may affect a youthful individual's development into the mid-20's and contribute to involvement in criminal justice systems, including environment, adverse childhood experiences, substance use, lack of educational

13

opportunities and familial relationships. In addition, youthful individuals generally are more impulsive, risk-seeking, and susceptible to outside influence as their brains continue to develop into a young adulthood. Youthful individuals also are more amenable to rehabilitation.

Regarding a defendant's mental health, the Sentencing Commission states, in pertinent part:

> Mental and emotional conditions may be relevant in determining whether a departure is warranted, if such conditions, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines. *See also* Chapter Five, Part K, Subpart 2 (Other Grounds for Departure).

In light of these policy statements, Mr. Ayers respectfully requests that the Court consider his age, mental conditions and other life circumstances in granting him a downward departure from the guideline range.

### G. THE NEED TO AVOID UNWANTED SENTENCING DISPARITIES PURSUANT TO 18 U.S.C. §3553(a)(6)

In paragraph 114 of the PSIR, Probation cites to the JSIN. As the JSIN notes, the JSIN should not be viewed as a recommendation of the appropriate sentence. Nor does the information provided reflect the Commission's position regarding the weight to be given, if any, to the above sentencing information in a court's determination of the appropriate sentence to be imposed.

Moreover, the JSIN analysis is deceiving. For the period of FY 2020-2024, the sample size of 3 is of no value. Additionally, the JSIN for these 3 individuals

does not inform this Court which enhancements were applied to which sentences. Factors other than those used by Probation in the case at bar may have resulted in the same guideline score, in which case the JSIN is of no value in determining comparable sentences.

Lastly, the Court is acutely aware of the sentences provided by the other co-defendants. To be sure all four defendants that have been sentenced received a downward departure from this Court.

### H. THE NEED TO PROVIDE RESTITUTION PURSUANT TO 18 U.S.C. §3553(a)(7)

Restitution is currently at issue.

### III. CONCLUSION

Although lawyers and legislatures speak in a statutory framework, sentencing is an inherently human endeavor. That is why the Constitution entrusts this decision to Judges, not guidelines. The Guidelines are a preliminary step. They are only one factor; they have no more weight than any other factor.

In, *Rita, supra,* 338, the Supreme Court held that the district courts can conclude that the guideline sentence fails to reflect 18 U.S.C. §3553(a) considerations, reflects an unsound judgment, does not treat defendant characteristics in the proper way, or that a different sentence is appropriate "regardless." Sentencing is a difficult and nuanced art. It is easy to make it mechanical by woodenly applying the guideline range.

15

Sentencing should be an act of reason by the judge looking at a particular person, the circumstances of the crime this person has committed and then making a judgment. *United States v. Dominquez*, 296 F.3d 192, 196 n.7 (3rd Cir. 2002) ("The Guidelines do not require a judge to leave compassion and common sense at the door to a courtroom"); *United States v. Meyers*, 353 F. Supp. 2d 1026, 2017 (S.D. Iowa 2005) ("[i]f the 600-plus pages of the most recent set of sentencing guidelines have taught us anything, it is that punishment cannot be reduced to an algorithm."); *United States v. Biheiri*, 356 F. Supp. 2d 589 (E.D. Va. 2005) ("fashioning a just sentence cannot be reduced to a mere arithmetical exercise and that reliance solely on numbers, quantities, offense levels, criminal history categories, and matrices produce an illusory precision that obscures the fact *that sentencing in the end, must involve the exercise of judgment*".) (Emphasis added).

For all the reasons set forth above, Mr. Ayers respectfully requests a sentence that is "sufficient but not greater than necessary" to comply with all the sentencing factors. Mr. Ayers respectfully and humbly submits that a sentence below the guideline range is appropriate in this case.

                                            Respectfully submitted,

                                            */s/ Michael A. Rataj*
                                            MICHAEL A. RATAJ (P43004)
                                            Attorney for Semaj Ayers
                                            500 Griswold, Suite 2450
                                            Detroit, MI 48226

Dated: August 12, 2025                        313-963-4529

## **CERTIFICATE OF SERVICE**

Michael A. Rataj hereby states that on August 12, 2025, I electronically filed *Defendant's Sentencing Memorandum and Certificate of Service* with the Clerk of the Court using the ECF system which will send notification of such filing to all parties listed on the Electronic Mail Notice List.

/s/ Michael A. Rataj
MICHAEL A. RATAJ